UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAHREESE FERERA,<br><br>    Plaintiff,<br><br> -against-<br><br>CITY OF NEW YORK and JOHN DOE NOS. 1-6,<br><br>    Defendants. | **COMPLAINT**<br><br>Case No. 24-3911 |

Plaintiff JAHREESE FERERA, for his complaint in this matter, alleges the following:

## NATURE OF THE ACTION

1. This is a § 1983 action for excessive force, home arrest without a warrant, and other violations of Plaintiff's constitutional rights. Without an arrest warrant or exigent circumstances, the defendant police officers forcibly entered Plaintiff's home and arrested him. One officer needlessly pointed a gun at him in the process.

## THE PARTIES

2. Plaintiff JAHREESE FERERA is a citizen of New York State.

3. Defendant CITY OF NEW YORK is a municipal corporation of New York State.

4. Defendant JOHN DOE #1, on information and belief, is an officer of the New York Police Department ("NYPD") and a citizen of New York State. He carries Badge Number 5139.

5. Defendant JOHN DOE #2, on information and belief, is an officer of the NYPD and a citizen of New York State.

6. Defendant JOHN DOE #3, on information and belief, is an officer of the NYPD and a citizen of New York State.

7. Defendant JOHN DOE #4, on information and belief, is an officer of the NYPD and a citizen of New York State.

8. Defendant JOHN DOE #5, on information and belief, is an officer of the NYPD and a citizen of New York State.

9. Defendant JOHN DOE #6, on information and belief, is an officer of the NYPD and a citizen of New York State.

**JURISDICTION AND VENUE**

10. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

11. This Court has personal jurisdiction over the Defendants because all Defendants are residents of New York State and because the wrongs were committed in New York State.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this district.

**THE FACTS**

13. On or about January 27, 2023, Plaintiff telephoned a hair stylist about styling his hair. The stylist agreed to come to his home to style his hair for a price of $60.

14. Upon completing the work of styling Plaintiff's hair, the stylist demanded $120 for the work, rather than the $60 that Plaintiff had agreed to pay. Plaintiff refused to pay the higher price.

15. Because Plaintiff was refusing to give her the higher price she wanted, the stylist began maliciously disarraying Plaintiff's home. She took things off the shelves and threw them about.

16. When the stylist began throwing things, Plaintiff asked the stylist to leave immediately.

17. When the stylist went outside, she took a brick and began banging unceasingly on Plaintiff's front door.

18. When the banging became intolerable, Plaintiff went outside to stop the stylist from banging the brick on Plaintiff's front door.

19. When Plaintiff exited his home, the stylist attempted to hit him with the brick. Plaintiff attempted to take the brick away from her.

20. As a result of Plaintiff's having to open his front door to stop the stylist from banging his front door with the brick, Plaintiff's dog ran outside.

21. Soon after Plaintiff came outside, Defendants JOHN DOE NOS. 1-8 arrived at Plaintiff's home.

22. As the Defendants JOHN DOE NOS. 1-6 began arriving at Plaintiff's home, Plaintiff retrieved his dog to take the dog back inside the house.

23. As he was taking his dog inside his house, Plaintiff repeatedly instructed the officers not to follow him into his house.

24. Ignoring Plaintiff's instructions, JOHN DOE #1 followed Plaintiff inside Plaintiff's house.  JOHN DOE #1 held Plaintiff's front door open and prevented Plaintiff from closing it.

25. As a result of JOHN DOE #1's initial illegal entry into Plaintiff's home, Plaintiff's dog again ran outside when JOHN DOE #1 opened the door.

26. When Plaintiff's dog ran outside again, Plaintiff attempted to retrieve his dog immediately, but JOHN DOE #1 prevented him from doing so.

27. When Plaintiff finally was able to retrieve his dog and bring him back into his house, Plaintiff again instructed the officers not to follow him into his home.  He made it crystal clear that he did not want the officers to come into his home.

28. Again ignoring Plaintiff's instructions, JOHN DOE #1 followed Plaintiff into his home. Other officers followed.

29. Defendants did not have an arrest warrant or any other warrant that would have entitled them to enter Plaintiff's home.

30. No exigent circumstances existed that would have justified the Defendants' entry into Plaintiff's home.

31. Upon entering Plaintiff's home, JOHN DOE #1 needlessly pulled out his gun and pointed it at Plaintiff. JOHN DOE #1 was already inside Plaintiff's home when he did so.

32. Upon drawing his gun, JOHN DOE #1 ordered Plaintiff to "put the dog away." But that is precisely what Plaintiff was already doing, and no reasonable person could have thought otherwise.

33. Plaintiff's dog is not dangerous.

34. No reasonable person could have thought that Plaintiff or his dog was a threat to anyone. Plaintiff was unarmed. Moreover, Defendant JOHN DOE #1 was preventing Plaintiff from putting his dog away by forcibly and illegally entering Plaintiff's home without a warrant or exigent circumstances.

35. Defendants JOHN DOE NOS. 1-6 entered Plaintiff's home without his permission and without an arrest warrant or exigent circumstances.

36. On information and belief, at some point during these events, the stylist maliciously and falsely accused Plaintiff of having punched her in the face.

37. Plaintiff never punched the stylist in the face. Plaintiff never assaulted Plaintiff in any way.

38. After Plaintiff was finally able to put his dog in another room, the Defendant officers informed Plaintiff that the stylist had accused Plaintiff of punching her in the face. They told him at that point that they were going to arrest him.

39. Before that point, none of the officers had attempted to arrest Plaintiff or said anything to Plaintiff suggesting that he would be arrested.

40. Plaintiff attempted to tell the officers that he had not punched the stylist and that the stylist had attempted to hit him with the brick.

41. The officers chose to believe the stylist and arrested Plaintiff. The officers handcuffed Plaintiff but did not read him his Miranda rights.

42. Plaintiff's 83-year-old grandmother, who lives with Plaintiff, was present and witnessed this entire sequence of events, including seeing her grandson's having to face a loaded gun pointed at him.

43. On information and belief, NYPD officers routinely point their guns at suspects when such suspects are unarmed and pose no danger to anyone. The failure to train officers properly constitutes deliberate indifference to the rights of citizens of New York City by Defendant New York City.

44. The other officers present could all witness JOHN DOE #1 pointing his gun at Plaintiff. None of them intervened. These other officers all had a duty to intervene to protect Plaintiff's constitutional rights but failed to do so.

45. Plaintiff is African-American. Defendant JOHN DOE #1 pointed his gun at Plaintiff because of Plaintiff's race.

46. Using excessive force, the Defendant officers arrested Plaintiff in his home without exigent circumstances and without an arrest warrant.

47. On information and belief, NYPD officers routinely arrest suspects in their homes without arrest warrants. The failure to train officers properly constitutes deliberate indifference to the rights of citizens of New York City by Defendant New York City.

48. The Defendant officers took Plaintiff to the police precinct. He remained there in police custody for nearly two days until his arraignment.

49. At his arraignment, Plaintiff was released on his own recognizance.

50. After his arraignment, Plaintiff had to return to court several times for the proceedings.

51. On or about December 6, 2023, all charges against Plaintiff were dismissed.

52. As a result of Defendants' unconstitutional conduct, Plaintiff suffered economic damages. He lost his job and lost wages of approximately $26,400.

53. As a result of Plaintiff's unconstitutional conduct, Plaintiff suffered considerable emotional damage. He lost approximately two days of his freedom. He had a gun pointed at him in front of his 83-year-old grandmother.

54. Defendants' conduct was so outrageous that punitive damages are warranted.

**COUNT ONE**
42 U.S.C. § 1983 – Fourth Amendment – Unconstitutional Home Arrest
(against all Defendants)

55. Plaintiff realleges paragraphs 1 through 54 as if same were fully set forth at length herein.

56. On or about January 27, 2023, under color of state law, Defendants John Doe #1-6 arrested Plaintiff in his home without an arrest warrant.

57. The Fourth Amendment prohibits arresting anyone in his or her home without an arrest warrant.

58. No exigent circumstances existed that could have justified the police officers in entering Plaintiff's home.

59. By arresting Plaintiff in his home without an arrest warrant, Defendants John Doe #1-6 violated Plaintiff's Fourth Amendment rights.

60. Upon information and belief, NYPD officers routinely arrest defendants in their homes without arrest warrants.

61. Defendant New York City has unreasonably failed to train its officers in the constitutional requirements of obtaining arrest warrants before arresting suspects in their homes.

62. By failing to train its officers properly, Defendant New York City has been deliberately indifferent to the rights of citizens of New York City. As a result of that indifference, Plaintiff was unconstitutionally arrested in his home.

63. As a result of this illegal arrest in Plaintiff's home, in violation of Plaintiff's Fourth Amendment rights, Plaintiff suffered economic damages. Also, Plaintiff lost his employment and lost wages of approximately $26,400.

64. As a result of this illegal arrest in Plaintiff's home, Plaintiff also lost approximately two days of his freedom and suffered considerable emotional damages.

## COUNT TWO
42 U.S.C. § 1983 – Fourth Amendment – Excessive Force
(against John Doe #1-4 and New York City)

65. Plaintiff realleges paragraphs 1 through 64 as if same were fully set forth at length herein.

66. In the course of arresting Plaintiff, Defendant JOHN DOE #1 used more force than was necessary. Defendant JOHN DOE #1 needlessly pointed a gun at Plaintiff.

67. Plaintiff was unarmed. Plaintiff was not a danger to anyone. Defendant JOHN DOE #1 had no reason to draw his gun or to point it at Plaintiff. This constituted excessive force.

68. By using force that was unnecessary and disproportionate under color of state law, Defendant JOHN DOE #1 violated Plaintiff's Fourth Amendment right to be free from illegal seizure. Defendant JOHN DOE #1 used an objectively unreasonable amount of force in the course of arresting Plaintiff.

69. The other officers John Doe #2-4 were right there and saw John Doe #1 needlessly pointing his gun. They had a duty to intervene to protect Plaintiff's constitutional rights but failed to do so.

70. Upon information and belief, NYPD officers routinely point guns at suspects needlessly when those suspects are not armed or dangerous.

71. Defendant New York City has further unreasonably failed to train its officers in the constitutional requirements of refraining from drawing their guns in nonthreatening and nondangerous situations.

72. By failing to train its officers properly, Defendant New York City has been deliberately indifferent to the rights of citizens of New York City. As a result of that indifference, Plaintiff was unconstitutionally arrested with excessive force.

73. As a result of this disproportionate and excessive force, Plaintiff suffered considerable emotional damages.

**COUNT THREE**
42 U.S.C. § 1983 – Fourteenth Amendment – Equal Protection
(against Defendant John Doe #1)

74. Plaintiff realleges paragraphs 1 through 73 as if same were fully set forth at length herein.

75. Defendant John Doe #1 pointed his gun at Plaintiff because of Plaintiff's race.

76. If Defendant John Doe #1 thought that Plaintiff posed any danger to anyone, it could only have been because of Plaintiff's race.

77. By treating Plaintiff differently from how he would have treated others, Defendant John Doe #1 violated Plaintiff's right to Equal Protection under the Fourteenth Amendment.

78. As a result of this disproportionate and excessive force that Defendant John Doe #1 employed because of Plaintiff's race, Plaintiff suffered considerable emotional damages.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that the Court grant the following relief:

A. Award compensatory damages in an amount to be determined at trial, but certainly no less than $26,400, for Plaintiff's economic damages;

B. Award compensatory damages in an amount to be determined at trial for Plaintiff's emotional damages;

C. Award punitive damages because Defendants' conduct is so outrageous that punitive damages are warranted;

D. Award reasonable attorneys' fees, together with the cost of this action;

E. Grant such other relief as the Court may deem appropriate.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands trial by jury in this action.

Dated: May 20, 2024
       New York, New York

                                        Respectfully submitted,

                                        /s/ Joshua Pepper            _
                                        Joshua Pepper
                                        30 Wall Street, 8th floor
                                        New York, New York 10005
                                        212-804-5768
                                        jpepper@jpepperesq.com