USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/24/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAHREESE FERERA,

Plaintiff,

-against-

CITY OF NEW YORK, ROCELIO FLORIAN (Shield #5139), DAVID VEGAMORALES (Shield #6953), LUIS RIVERA (Shield #8037), and STEVEN MARTINEZ (Shield #7596),

Defendants.

24 Civ. 3911 (AT) (OTW)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Jahreese Ferera, brings this 42 U.S.C. § 1983 action against Defendants—the City of New York (the "City") and New York City Police Department ("NYPD") Officers Rocelio Florian, David Vegamorales, Luis Rivera, and Steven Martinez (the "NYPD Officers")—alleging Fourth Amendment violations arising from the NYPD Officers' warrantless entry into Plaintiff's home and his subsequent arrest. *See generally* Am. Compl., ECF No. 20. Plaintiff and Defendants cross-move for summary judgment on Plaintiff's claim of unconstitutional home entry and arrest. *See* Am. Compl. ¶¶ 55–64 (Count One); Def. Mem. I, ECF No. 96; Pl. Mem. I, ECF No. 98; Def. Mem. II, ECF No. 105; Pl. Mem. II, ECF No. 107.

On August 18, 2026, the Honorable Ona T. Wang issued a report and recommendation ("R&R") recommending that Defendants' motion be denied in part (claims against the Individual Officers) and granted in part (claim against the City), and that Plaintiff's motion be denied. *See* R&R, ECF No. 110. Plaintiff filed objections, to which Defendants responded; Defendants filed no objections. *See* Objs., ECF No. 111; Defs. Resp., ECF No. 122. For the reasons stated

below, the Court declines to adopt the R&R and DENIES the cross-motions in full. Plaintiff may proceed on his claims against both the NYPD Officers and the City.

**BACKGROUND**

The following undisputed facts are taken from the parties' Rule 56.1 statements, the body worn camera ("BWC") footage, and the officers' depositions.

On January 27, 2023, Florian and Rivera were dispatched to Plaintiff's home following a 911 call reporting an assault. Def. 56.1 ¶¶ 1, 3, ECF No. 100.[1] Earlier that day, a hairstylist, MW, came to Plaintiff's home to braid his hair. *Id.* ¶ 2. When Florian and Rivera arrived, Plaintiff and MW were in the street. *Id.* ¶ 3. Defendants claim that the two were "engaged in an altercation." *Id.* Plaintiff alleges that he had "gone outside to retrieve his dog." *Id.* As Florian and Rivera arrived, Plaintiff was saying, "I'm trying to put my dog in the house," *id.*, and MW was screaming that Plaintiff had "sicc[ed] his dog on [her]," *id.* ¶ 4. *See* Rivera BWC at 1:00–1:16, ECF No. 95-6.[2] Florian and Rivera separated the two, and Plaintiff "retrieved his unrestrained dog and began to walk towards his [home] while holding the dog." Def. 56.1 ¶ 6; *see also* Pl. 56.1 ¶ 40, ECF No. 106.

The two officers followed Plaintiff to his door. Plaintiff attempted to close the door behind him, telling the two officers he would be "right back" after he restrained his dog. *See* Def. 56.1 ¶¶ 7–8. Florian, however, placed his foot in the door, preventing Plaintiff from closing it. *Id.*; Florian Dep. 22:5–23, ECF No. 99-2. After Plaintiff explained that he needed to close the door to put the barking dog away, Florian repeatedly said, with his foot in the door, "Don't close

---

[1] Citations to Defendants' Rule 56.1 statement include Plaintiff's response, and citations to Plaintiff's Rule 56.1 statement include Defendants' responses.

[2] The Court primarily relies on Rivera's BWC because Florian did not activate his BWC. *See* Rivera Dep. 38:4–24, ECF No. 99-3. Florian's BWC remained off until Rivera activated it after the officers had already entered Plaintiff's home. *Id.*

the door." Def. 56.1 ¶ 12; *see* Rivera BWC 1:45–55.[3] Plaintiff reiterated his desire to close the door to secure the dog, and Florian said, "that's fine, the door can stay like this." Rivera BWC 1:50–53. After the two went back and forth for some more time about the need to close the door, Florian pushed the door open and entered Plaintiff's home. *See id.* at 2:01–25.

These events were captured by Rivera's body-worn camera and are, therefore, largely undisputed. In his deposition, Florian confirmed that the interaction unfolded as shown in the footage:

> So as [Plaintiff is] walking away I followed him and I am telling him to stop and talk to us to hear his side of the story. He's just repeating I need to get my dog inside. When he enters his house he's attempting to close the door on us and I'm telling him you have a side of the story to say, talk to us at the door. He's like no, no, no. So I put my foot in the door so that he can't close it. At that point he's already as far as what we were told we have probable cause to arrest him just for the assault alone from what she is claiming. Also I don't know what is behind that door that he could potentially use to harm us, the victim or himself or anybody inside the house. I just wanted to have an eyesight of him and he was really protesting against that. So that's when we walked inside.

Florian Dep. 22:05–23.

Because Florian pushed the door open, Plaintiff's dog escaped outside, and Plaintiff implored Florian to let him outside to retrieve and control his dog, who was barking loudly. Def. 56.1 ¶¶ 14–15, 19; *see* Rivera BWC 2:30–3:15. Plaintiff eventually ran out, secured the dog, and returned to his doorway. *See id.* Plaintiff stated, "don't come in my house," and said he would "put the dog away." Rivera BWC 3:00–3:15. He then told Florian that Florian had "just intruded [his] property," to which Florian responded, "this is not your property," and walked into Plaintiff's home. Rivera BWC 3:10–30. Florian held Plaintiff, who was holding his dog in his arms, at gunpoint. *See* Def. 56.1 ¶¶ 20–22; Rivera BWC 3:15–06. Inside, Florian, continuing to hold Plaintiff at gunpoint, directed Plaintiff to put the dog in another room; Plaintiff complied,

[3] In the BWC footage, the dog appears to be mid-sized. Plaintiff states that it weighs 35 pounds. Def. 56.1 ¶ 18.

while asking Florian to stop following him, which he did not do. *See* Def. 56.1 ¶¶ 22–23; Rivera BWC 3:58–4:24. Plaintiff's grandmother, who has Alzheimer's and with whom he lives, is in the background of the BWC footage. *See* Rivera BWC 3:58–4:24; Pl. Dep. 75:18–25, 76:1–10, ECF No. 99-1.

After Plaintiff secured his dog, the NYPD Officers spoke with him in the living room, asking him why MW reported that he punched her in the face. *See* Rivera BWC 5:00–03. Plaintiff explained his version of events and emphasized that the "whole time" he was "just trying to put dog away." *Id.* 5:03–52. According to Plaintiff, MW came to his house to braid his hair. Pl. 56.1 ¶ 31. Although the two had agreed on a price, Plaintiff states that MW demanded more money and began ransacking Plaintiff's house when he refused to pay. *Id.* ¶ 33. After MW left, she grabbed a brick from outside, and when Plaintiff tried to grab brick from her, his dog ran. *Id.* ¶¶ 34–35. Eventually, Plaintiff, MW, and the dog ended up in the street, which is what Florian and Rivera saw when they arrived. *See id.* ¶ 36. Florian arrested Plaintiff. *See* Rivera BWC 7:51–8:20; Florian Dep. 90:19–22. The NYPD Officers did not read Plaintiff his *Miranda* rights. Pl. 56.1 ¶ 85.

Plaintiff was eventually charged with first-degree attempted rape and first-degree sexual abuse, but the charges were dismissed. Def. 56.1 ¶¶ 29–30. Contrary to Defendants' and the R&R's characterization, *see* R&R at 2–3, however, the record contains no evidence from which a jury could find that the officers believed that MW accused Plaintiff of sexual assault before they first entered Plaintiff's home or arrested him. The officers state only that they knew of an "assault," without further detail. *See, e.g.*, Rivera BWC 2:00–2:10, 2:40–2:47; Rivera Dep. 12:2–12:18, ECF No. 99-3 (stating that the office dispatcher "just said assault," with no additional information); Florian Dep. 18:7–8 ("But from what I remember it was that she was

struck."), 21:16–21, 27:17–25 (Florian's testimony that he arrested Plaintiff based on MW's statement that Plaintiff hit her). Indeed, when asking Plaintiff for his side of the story, no officer mentioned sexual assault, *see* Rivera BWC 5:00–03 ("Why was she calling [to] say you punched her in the face?"), 5:35–42 ("If she's claiming that you punched her in her face, then you're going to get arrested."). And when Florian arrested Plaintiff, he told Plaintiff that it was because of a report that Plaintiff had punched MW. *See* Rivera BWC 7:40–8:05 (Florian stating that Plaintiff was being arrested for "what [Florian already] told [Plaintiff]," namely, for "assault" because he "punched" the complainant).

Defendants concede that the NYPD Officers did not have a warrant to enter Plaintiff's home and arrest him. Pl. 56.1 ¶ 52.

## LEGAL STANDARD

### I. Standard of Review

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The Court may adopt those portions of the R&R to which no objection is made "as long as no clear error is apparent from the face of the record." *Oquendo v. Colvin*, No. 12 Civ. 4527, 2014 WL 4160222, at *2 (S.D.N.Y. Aug. 19, 2014) (citation omitted). An R&R is clearly erroneous if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citation omitted); *see also Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d 279, 283 (E.D.N.Y. 2009).

The Court reviews *de novo* properly raised objections to an R&R. *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 361 (2d Cir. 2025). Proper objections are timely and specific. *Id.* at 359. "In order to preserve for appeal an issue in a magistrate judge's report, a

party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Id.* at 359 (quoting *Martin v. Duffy*, 858 F.3d 239, 245 (4th Cir. 2017)). Additionally, an objection "generally may not raise new arguments not previously made before the magistrate judge." *Id.*

II. <u>Summary Judgment Standard</u>

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247 (emphasis in original). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict" for the nonmovant. *Id.* at 248.

The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact by citing specific evidence in the record. Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). But, if the nonmovant bears the burden of proof at trial, the movant may satisfy its initial burden by demonstrating that the nonmovant cannot produce admissible evidence to support the existence of a triable issue of material fact. *See Celotex*, 477 U.S. at 322–23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). If the movant meets its initial burden, the burden shifts to the nonmovant to establish a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 529 (2006). In deciding a motion for summary judgment, the Court views

the evidence in the light most favorable to the nonmovant and draws all factual inferences in the nonmovant's favor. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997).

"[E]ven when both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter a judgment for either party." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). "Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Id.*

**DISCUSSION**

III. Claim Against NYPD Officers

The Court analyzes whether: (1) the NYPD Officers violated Plaintiff's constitutional rights; and (2) the rights were sufficiently clearly established at the time of the violation to override the NYPD Officers' qualified immunity from suit. *See Simon v. City of New York*, 893 F.3d 83, 92 (2d Cir. 2018). There is no dispute that NYPD Officers entered Plaintiff's home and arrested him without a warrant. The parties only dispute whether a warrant exception applies. Reviewing the R&R *de novo* based on Plaintiff's objections, the Court disagrees with certain aspects of the R&R's analysis but nonetheless reaches the same result—that there are triable issues as to whether a warrant exception applies and that factual issues preclude granting the NYPD Officers qualified immunity.[4] The Court, therefore, denies the parties' cross-motions for summary judgment.

A. Fourth Amendment Requirements

"[W]hen it comes to the Fourth Amendment, the home is first among equals." *Florida v. Jardines*, 569 U.S. 1, 6 (2013). "At the Amendment's 'very core' stands 'the right of a man to

[4] The City, by not objecting to the R&R, has waived any argument contending otherwise.

retreat into his own home and there be free from unreasonable government intrusion.'" *Id.* (citation omitted); *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984) ("[P]hysical entry of the home is the chief evil against which . . . the Fourth Amendment is directed." (citation omitted)). As such, "[t]he Fourth Amendment ordinarily requires that police officers get a warrant before entering a home without permission," even if the officers have probable cause to make an arrest. *Lange v. California*, 594 U.S. 295, 298 (2021); *Collins v. Virginia*, 584 U.S. 596, 595–96 (2018); *Payton v. New York*, 445 U.S. 573, 585–86 (1980).

One exception to the warrant requirement, which Defendants invoke here, is that "an officer may make a warrantless entry when 'the exigencies of the situation' create a compelling law enforcement need." *Lange*, 594 U.S. at 298 (quoting *Kentucky v. King*, 563 U.S. 452, 460 (2011)). The exigent circumstances exception applies only to emergency situations "presenting a 'compelling need for official action and no time to secure a warrant.'" *Id.* at 301 (quoting *Riley v. California*, 573 U.S. 373, 402 (2014)). The "contours" of this exception are "jealously and carefully drawn in keeping with the centuries-old principle that the home is entitled to special protection." *Id.* (internal quotation marks and citation omitted); *see also Caniglia v. Strom*, 593 U.S. 194, 199 (2021) (observing that the Supreme Court "has repeatedly 'declined to expand the scope . . . of exceptions to the warrant requirement to permit warrantless entry into the home'" (citation omitted)).

Circumstances constituting an emergency include "imminent harm to others, a threat to the officer himself, destruction of evidence, or escape from the home." *Lange*, 594 U.S. at 309; *see Case v. Montana*, 607 U.S. 107, 114 (2026) (involving the "need to provide an occupant with emergency aid"). In evaluating whether "law enforcement agents [are] confronted by an 'urgent need' to render aid or take action," the Second Circuit considers the facts articulated in *Dorman*

*v. United States*, 435 F.2d 385 (D.C. Cir. 1970) (en banc), as an "illustrative sampling of the kinds of facts" to be considered. *United States v. MacDonald*, 916 F.2d 766, 769–70 (2d Cir. 1990). These include:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect 'is reasonably believed to be armed'; (3) 'a clear showing of probable cause . . . to believe that the suspected committed the crime'; (4) 'strong reason to believe that the suspect is in the premises being entered"; (5) 'a likelihood that the suspect will escape swiftly if not apprehended'; and (6) the peaceful circumstances of the entry.

*Id.* (citation omitted).

One type of exigent circumstance is "hot pursuit." "The hot pursuit doctrine provides 'that a suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place.'" *Fernandez v. City of New York*, 457 F. Supp. 3d 364, 382 (2020) (quoting *United States v. Santana*, 427 U.S. 38, 43 (1976)). For the doctrine to apply, however, there must, in fact, be a pursuit. "[A]lthough the flight need not be reminiscent of the opening scene of a James Bond film, there must be 'some sort of chase.'" *Lange*, 594 U.S. at 329 (Roberts, C.J., concurring) (quoting *Santana*, 427 U.S. at 43). And, where a "suspect, for example, chooses to end a voluntary conversation with law enforcement and go inside [his] home, that does not constitute flight." *Id.* (citing *Florida v. Royer*, 460 U.S. 491, 497–498 (1983) (plurality)). Further, "[i]n misdemeanor cases, flight does not always supply the exigency that [the Supreme] Court has demanded for warrantless home entry." *Lange*, 594 U.S. at 308. Even when an exigency exists, "[t]he Supreme Court has clearly established that police cannot use the exigent circumstances exception if they 'create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment.'" *Felix v. City of New York*, 408 F. Supp. 3d 304, 310 (S.D.N.Y. 2019) (quoting *King*, 563 U.S. at 462).

B. Constitutional Violation

The Court has carefully reviewed Plaintiff's objections. Although the Court grants Plaintiffs' objections in part, narrow issues of material fact nonetheless preclude summary judgment for Plaintiff.

First, the Court grants Plaintiff's objection to the extent that hot pursuit alone does not justify the warrantless entry here. *See* Objs. at 9–12. "[T]he need to pursue a misdemeanant does not trigger a categorical rule allowing home entry," *Lange*, 594 U.S. at 308, and the record establishes that the NYPD Officers were responding to a suspected misdemeanor, not felony. *See* Objs. at 14. On this record, no reasonable jury could find that the NYPD Officers were responding to a sexual assault, and the most serious charge consistent with the officers' understanding of the facts is misdemeanor assault. *See* Florian Dep. 104:10–17 ("She was struck on the side of the face resulting in pain, no visible injuries, but pain nonetheless."); N.Y. Penal Law § 120.00 (defining assault in the third degree, "a class A misdemeanor," as "assault . . . with the intent to cause injury to another person" and that "causes such injury to such person or to a third person"); *see also Fernandez*, 457 F. Supp. 3d at 382, 385 (finding, under circumstances in which a purported victim had a nosebleed after an altercation, that "the most serious charge consistent with [the facts] is assault in the third degree, a misdemeanor"). Thus, even if a jury credited Florian and Rivera's testimony that an arrest was in motion and Plaintiff sought to avoid it by entering his home,[5] this finding, without more, could not justify the NYPD Officers' warrantless entry.

[5] The evidence of flight from an arrest in motion is minimal but exists. *See* Rivera Dep. 18:23–19:6 (stating that Plaintiff was "in a way" "fleeing from [the officers] . . . going into his house" because he was not "trying to just stop and answer [the officers'] questions"); Florian Dep. 22:5–18 (testifying that "as [Plaintiff was] walking away, [Florian was] telling him to stop" and that the NYPD Officers had probable cause for arrest); *but see* Objs. at 9 ("Defendants never tried to arrest Plaintiff outside, they did not attempt to catch him when they were following him into the home, and even when they were inside Plaintiff's home, they did not arrest him promptly.").

Even under *Lange*, however, a suspect's flight may be considered in conjunction with other circumstances to determine if there is an emergency justifying warrantless entry. *See Lange*, 594 U.S. at 313. To that end, the Court considers Plaintiff's objections to the R&R's weighing of the six *MacDonald* factors, *see* Objs. 13–18, and finds that it is for a jury to decide whether, considered collectively, the facts constitute (1) exigency sufficient to justify warrantless entry, (2) no exigency, or (3) law enforcement-created exigency only.

As an initial matter, the Court agrees with Plaintiff that Defendants must point to *some* exigency, and that in this case nothing in the record provides the officers with an objectively reasonable basis to believe that Plaintiff was destroying evidence or a risk to anyone inside the home. *See id.* at 8. The Court further agrees that the officers testified throughout their depositions that they entered Plaintiff's home to "hear [Plaintiff's] side of the story," Florian Dep. 22:5–7—which, standing alone, falls far short of showing a "now or never" situation justifying warrantless entry, *Lange*, 594 U.S. at 302. *See, e.g.*, Florian Dep. 71:24–72:18 (Florian describing the portion of the video in the living room as "an investigation," not yet an arrest); Rivera Dep. 20:2–6 (stating that the officers followed Plaintiff because they "ha[d] an investigation to complete"), *id.* 31:6–12 (stating that the officers entered the home because they "needed to go forward with the investigation"); *id.* 31:23–32:4 (stating the officers "ha[d] to . . . pursue [Plaintiff]" because they "still had an investigation to carry out").

However, Florian also testified that there was a threat of danger, and officer safety can constitute exigent circumstances. *See Lange*, 594 U.S. at 301, 309. "The fact that the [911] call was of a violent nature and [Plaintiff] . . . seemed to not want to deal with it . . . [led Florian] to be suspicious about what [was] behind [Plaintiff's] door now that could potentially hurt [the officers], himself or anybody else." Florian Dep. 37:20–38:4; *see also id.* 22:18–23 ("I don't

know what is behind that door that he could potentially use to harm us."), 117:4–16 (describing the dog as "vicious enough" that Florian was "concerned about it chewing [his] face off"), 125:24–126:4 (suggesting that Plaintiff was "pointing the dog at [the officers]" and "using it as a ploy to stall"), 144:14–18 ("[T]he dog . . . could have been used as a weapon or a dangerous instrument in this case in which it could have caused, you know, . . . harm to me or anybody else . . . . so it was a safety issue.").

It is the jury's role to weigh evidence and make credibility determinations, and a reasonable jury could find that an unrestrained and agitated dog, allegations of violence, and Plaintiff's arguable flight from the officers, could create exigent circumstances in the form of danger to law enforcement. It is for the jury to make credibility determinations based on the seeming inconsistencies between the NYPD Officers' behavior and testimony—for example, Florian and Rivera's testimony that they entered the home not to nullify a threat but really to question Plaintiff for their investigation, or Florian's claim that he was afraid of the dog, notwithstanding his earlier statement when Plaintiff was attempting to restrain the dog that it was "fine" and "the door can stay like this." *Compare* Rivera BWC 6:26–32, *with id.* 1:50–53.

It is also for the jury to consider whether any danger and related exigency were police-created—for example, by Florian's initial refusal to allow Plaintiff to close the door to secure the dog. *See* Objs. at 15; *see, e.g.*, *King*, 563 U.S. at 462 n.4 ("[T]he exigent circumstances rule should not apply where the police, without a warrant or any legally sound basis for a warrantless entry, threaten that they will enter without permission."); *Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 109 (2d Cir. 2020), *abrogated on other grounds by Case*, 607 U.S. 107; *see also Case*, 607 U.S. at 120–22 (Sotomayor, J., concurring) ("[T]he presence of law enforcement at times can escalate the situation rather than ameliorate it. . . . Given these

risks, in some circumstances it may be more reasonable for officers to try different means of de-escalation before entering the home of a person.").

Ultimately, because of the fact-intensive, totality-of-the-circumstances inquiry, the Court denies Plaintiff's motion for summary judgment.

C. Qualified Immunity

Qualified immunity "shield[s an officer] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The same factual issues discussed above apply to the issue of qualified immunity, precluding summary judgment for Defendants. On this record, a jury could conclude, for example, that the NYPD Officers entered Plaintiff's home without a warrant merely to continue an investigation, or that the only exigency, if any, was caused by their initial refusal to let Plaintiff close the door to put his dog away. Based on the clearly established law explained in Section III.A, "every reasonable official would have understood that" such conduct violates Plaintiff's Fourth Amendment rights. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotation marks and citation omitted); *see also United States v. Allen*, 813 F.3d 76, 81 (2d Cir. 2016) ("It is . . . settled law that, at a minimum, law enforcement officers violate [the Fourth Amendment] when, in the absence of exigent circumstances or consent, they physically enter protected premises to effect a warrantless search or arrest."); *Felix*, 408 F. Supp. 3d at 310.

IV. <u>Claim Against the City</u>

The R&R recommends dismissing Plaintiff's claim against the City under *Monell v. Dep't of Soc. Servs. of City of New York*, 435 U.S. 658 (1978), finding that Plaintiff has not "produced an official policy of the municipality or shown that the policy caused constitutional

injury to Plaintiff." R&R at 16. Plaintiff objects, arguing that he has shown that the City's "standard operating procedure" and "inadequacy of police training" caused his constitutional violation. *See* Objs. at 19–20. The Court agrees in part with Plaintiff, finding that he has presented a triable issue as to his *Monell* claim and, therefore, declines to adopt the R&R and denies the City summary judgment.

"In order to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). Although "'isolated acts . . . by non-policymaking employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify liability,' they can be the basis of liability if 'they were done pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage' of which supervisors must have been aware." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012)). In addition, the "inadequacy of police training" can serve as the basis for *Monell* liability "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton v. Harris*, 489 U.S. 378, 388 (1989).

A jury could find that Plaintiff's injuries were caused by an official, unconstitutional policy of the City—namely, that officers have the widespread practice or custom of entering (or were trained to) enter the home of a suspect based only on probable cause, without a warrant or exigent circumstances. For example, when asked whether his "training is that any time you have probable cause to arrest someone and that person goes into his home, you can follow [the person]

into his home," Florian responded, "Go anywhere. Not just the home." Florian Dep. 46:5–14. Florian also testified, "in *every case* that if we have probable cause to arrest someone and the person leaves, we can pursue them." *Id.* 45:25–46:3 (emphasis added).[6] In fact, Florian, who has been an NYPD officer for five years, *id.* 9:3–8, testified he has "never obtained a warrant before," *id.* 39:3–8. Rivera, when asked about the NYPD's "standard operating procedure" when "a person walks away from the police and retreats into his home," testified that in "most cases," he can "follow[] [the] person into his home." Rivera Dep. 25:12–26:7. He also claimed that officers "have to pursue" someone who was "accused of committing a crime" if that person "walks away and walks inside of his home." *Id.* 34:18–25. "Courts have routinely found that officer testimony is sufficient for establishing a custom or policy." *Ganz v. Nassau Cnty., New York*, No. 25 Civ. 2283, 2026 WL 2475421, at *11 (E.D.N.Y. Aug. 24, 2026) (collecting cases).

It is for a jury, not the Court, to assess the officers' credibility and weigh the evidence in determining whether the stated practice of following a person into their home solely based on probable cause is sufficiently persistent or widespread and/or reflective of inadequate police training that is deliberately indifferent to the rights of New Yorkers. Finding a triable issue, the Court denies Plaintiff's and the City's cross-motions for summary judgment on the *Monell* claim.

## CONCLUSION

Plaintiff's and Defendants' cross-motions for summary judgment are each DENIED.

By **October 5, 2026**, the parties shall state whether they wish to participate in a settlement conference before Judge Wang or request a referral to the Southern District's

[6] This is plainly unconstitutional. *See, e.g.*, *Welsh*, 466 U.S. 753 ("[N]o exigency is created simply because there is probable cause to believe that a serious crime has been committed."); *Lange*, 594 U.S. at 313 ("The flight of a suspected misdemeanant does not always justify a warrantless entry into a home. An officer must consider all the circumstances in a pursuit case to determine whether there is a law enforcement emergency.").

Mediation Program. Rule V(B) of the undersigned's Individual Practices in Civil Cases governs the parties' deadline for pretrial submissions.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 93, 97.

SO ORDERED.

Dated: September 24, 2026
New York, New York

ANALISA TORRES
United States District Judge